## Commonwealth v. Kirklin

C.P. of Lawrence County, no. 1284 of 2000, CR.

*Brigitte Tolvanen, assistant district attorney,* for Commonwealth.

*Harry O. Falls, public defender,* for defendant.

MOTTO, *J.,* June 24, 2002—The defendant, while confined under juvenile court order to the youth development center in Lawrence County, Pennsylvania, spit on a counselor, as a result of which he was found guilty by the court, following a non-jury trial, of the offense of aggravated harassment by prisoner, a felony of the third degree, in violation of section 2703.1 of the Crimes Code.

Before the court for disposition is the defendant's post-verdict motion for judgment of acquittal wherein defendant argues that he cannot be found guilty of the offense charged because he was not a person confined in or committed to "any local or county detention facility, jail or

prison or any state penal or correctional institution or other state penal or correctional facility located in this Commonwealth . . . ."

The precise issue is whether the youth development center located in Lawrence County, Pennsylvania, constitutes a state correctional institution or facility within the meaning of section 2703.1 of the Crimes Code.

For the reasons hereafter set forth, the court concludes that a youth development center constitutes a state correctional institution or facility; therefore, the defendant's motion for judgment of acquittal must be denied. The issue before the court is a question of first impression as the court has been unable to locate any Pennsylvania court decision which has precisely addressed this issue as it relates to a youth development center. The statute which the defendant was found guilty of violating, section 2703.1 of the Crimes Code, 18 Pa.C.S. §2703.1, provides in its entirety as follows:

"Section 2703.1. Aggravated harassment by prisoner

"A person who is confined in or committed to any local or county detention facility, jail or prison or any state penal or correctional institution or other state penal or correctional facility located in this Commonwealth commits a felony of the third degree if he, while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed, intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material."

In *Commonwealth v. Clark,* 761 A.2d 190 (Pa. Super. 2000), the Superior Court, in construing the same crimi-

nal statute, concluded that a police lock-up was, in fact, a local or county detention facility as contemplated by the statute. In so concluding, the court noted that the provisions of the Crimes Code are construed according to the fair import of their terms and further pointed out that pursuant to 18 Pa.C.S. §105, "when the language is susceptible of different constructions, it should be interpreted to further the general purposes [of the Crimes Code] and the special purposes of the particular provision involved . . . ." 716 A.2d at 192.

Although section 2703.1 addresses conduct which occurs in a jail or prison or a state penal institution, it also provides for culpability relative to conduct occurring in a state "correctional" facility or institution. Thus, the question becomes whether or not a youth development center qualifies as a "correctional" institution or facility.

The statute clearly provides for a correctional facility to be something other than a jail or penal institution since it refers to "a state penal *or* correctional facility." (emphasis added)

The purpose of a youth development center is set forth in 62 P.S. §341, relating to state institutions as follows:

"Section 341. Purpose the purpose of the youth development centers is to promote and safeguard the social well-being and general welfare of minors of this Commonwealth by providing social services and facilities for the *rehabilitation of delinquent minors* who require care, guidance and control." (emphasis added)

Since the stated purpose of a youth development center, by statute, involves rehabilitation, the court finds that the rehabilitation aspect of the purpose of a youth devel-

opment center is consistent with corrections. The purpose of a correctional facility is rehabilitation. Therefore, since the purpose of confinement of a delinquent minor to a youth development center includes rehabilitation, it must also be considered a correctional facility. An individual ordered to placement in a youth development center through the provisions of the Juvenile Code is as much confined or committed as a defendant in a criminal case who may be sentenced to serve imprisonment in a penal institution.

In construing the statute to further the general purposes of the Crimes Code and the special purposes of the specific statute with which the defendant has been charged in this case, it would be consistent with the purposes of the statute to impose culpability on an adult defendant confined in a youth development center. The evidence in this case showed that many of the individuals committed to the youth development center have committed violent crimes. Defendant himself was one such person and was confined to a 23-hour lock-down. The individuals who are responsible for the care and control of the juveniles committed to the youth development center are subject to the same harassment and dangers as those responsible for the care and control of individuals sentenced to penal institutions or other types of correctional institutions or facilities. It is further noted that the youth development center is as secure a facility as many prisons as it is encompassed by two perimeters of chain-link fencing topped with razor wire.

In recent years, the juvenile justice system has undergone a transformation, as pointed out in *In the Interest of J.F.,* 714 A.2d 467 (Pa. Super. 1998), as follows:

"As appellants correctly point out, the juvenile justice system has undergone a transformation over the past two decades in which there has been a move away from the rehabilitation and protection of juvenile offenders toward more punishment and correctional oriented policies . . . . The recent amendments to the Act are a reflection of the changing nature of juvenile crime, as society has witnessed a progression in the number of violent offenses committed by juveniles." 714 A.2d at 471.

The 1995 amendments to the Juvenile Act substantially modified the stated purposes of the Juvenile Act and affected considerations relating to disposition of juvenile offenders.

Section 6301(b)(2) of the Juvenile Act, 42 Pa.C.S. §6301(b)(2) provides as follows:

"(b) Purposes.

"This chapter shall be interpreted and construed as to effectuate the following purposes:

"(2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and *rehabilitation* which provide balanced attention to the protection of the community, *the imposition of accountability for offenses committed* and the development of competencies to enable children to become responsible and productive members of the community." (emphasis added)

Section 6352(a) of the Juvenile Act, 42 Pa.C.S. §6352 (a) goes on to provide, as it relates to authorized disposition of a child found to be delinquent, the authority to make the following types of orders:

"Orders of disposition determined to be consistent with the protection of the public interest and best suited to the

child's treatment, supervision, *rehabilitation* and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, *the imposition of accountability for offenses committed* and the development of competency to enable the child to become a responsible member of the community." (emphasis added)

As stated in *In the Interest of J.F., supra,* the changes in the stated purpose of the Juvenile Act, as reflected in the 1995 amendments, demonstrate a concern that juveniles be held accountable for their actions and that the community be protected from violent juvenile offenders. Accordingly, commitment to a youth development center of a juvenile having been found delinquent in the commission of a serious and violent criminal offense is, in the view of the court, a commitment with confinement to a state correctional facility. Rehabilitation and punishment in the form of accountability for one's actions are considerations within the scope of the commitment and confinement and address the responsibility for the commission of acts, which are prescribed by a criminal statute. Therefore, there is no factual basis upon which to distinguish a youth development center from any other type of correctional facility to which an adult defendant may be sentenced.

If the legislature had intended to distinguish juvenile institutions from those designed for the commitment of adult offenders, then such differentiation could have been set out in the statute.

The defendant has argued that since the legislature specifically addressed juvenile proceedings in section

2702(a2) and (c) of the Crimes Code (18 Pa.C.S. §2702 (a2) and (c)) relating to the charge of aggravated assault, committed upon specified categories of persons therein defined, that the section here under consideration, 2705.1 of the Crimes Code, must be construed to exclude juvenile facilities. Listed in subsection 2702(c)(9) of the Crimes Code as persons falling within the scope of the statute as victims are the following individuals:

"(9) Officer or employee of a correctional institution, county jail or prison, juvenile detention center or any other facility to which the person has been ordered by the court pursuant to a petition alleging delinquency under 42 Pa.C.S. Ch. 63 (relating to juvenile matters)."

The court does not find defendant's argument to be persuasive. The scope of protected employees of facilities in section 2702(c)(9) of the Crimes Code is intended to be broader than those enumerated in section 2703.1 of the Crimes Code, because section 2702(c)(9) is intended to include employees of any facility to which a juvenile may be ordered, regardless of whether or not it is a state facility, and regardless of whether it may be considered a corrections facility.

For the foregoing reasons, the court will deny the defendant's post-verdict motion for judgment of acquittal.

## ORDER

And now, June 24, 2002, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that the defendant's post-verdict motion for judgment of acquittal is denied.

Sentencing of the defendant is scheduled for August 29, 2002, at 9:30 o'clock a.m. in courtroom no. 2.

The adult probation office shall prepare a pre-sentence investigative report.

The clerk of courts shall exit a copy of this order to counsel of record and to the adult probation office of Lawrence County.